UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JONATHON C., )
    Plaintiff, )
 )
v. )  C.A. No. 24-cv-203-JJM-PAS
 )
MARTIN O'MALLEY, Commissioner, )
Social Security Administration, )
    Defendant. )

## ORDER

Plaintiff Jonathon C. applied for Social Security Disability Insurance Benefits ("DIB") and was denied after the Administrative Law Judge ("ALJ") found that he was not disabled. ECF No. 6-20 at 1481-1500. Before the Court are competing motions—Jonathon's Motion to Reverse or Remand the Decision of the Commissioner, and Defendant Commissioner Martin J. O'Malley's Motion to Affirm the Decision of the Commissioner. ECF Nos. 8 and 9.

### I.   BACKGROUND

Jonathon was 35 years old on the date of his disability application. He is a high school graduate and a military veteran. His past relevant work is as a housekeeper and cashier.

Jonathon applied for DIB in April 2020 with an onset date of July 6, 2018. The ALJ denied his claim. ECF No. 6-2 at 15-25. Jonathon appealed to this Court (C.A. No. 22-37-MSM), and the Commissioner, with Jonathon's consent, moved to remand the case. The Court's order stated that on remand, "the agency will direct the

administrative law judge to offer the claimant the opportunity for a new hearing; re-evaluate the medical opinions and prior administrative medical findings; re-evaluate the residual functional capacity; and, if warranted, obtain vocational expert testimony to determine the effects of the assessed limitations on the claimant's ability to work." ECF No. 6-21 at 1560-61.

In August 2023, the ALJ issued another decision denying Jonathon benefits. ECF No. 6-20 at 1481-1500. The ALJ considered bipolar disorder, post-traumatic stress disorder, and personality disorder as severe impairments and back and substance abuse disorders and migraines as non-severe impairments. The ALJ found Jonathon to have an RFC to perform a full range of work at all exertional levels with the following nonexertional limitations: maintaining attention and concentration to carry out simple tasks/instructions; maintaining occasional interaction with coworkers and supervisors; cannot interact with the public; cannot perform team-oriented tasks; cannot perform time-pressured tasks such that he is limited to goal-oriented work, not time-sensitive production quotas; limited to working primarily with things/objects rather than people; can tolerate simple routine changes in a work setting. *Id.* at 1489.

Jonathon appeals the ALJ's decision on three grounds: (1) the Commissioner erred as a matter of law by failing to consider his ability to complete a normal workday and work week in his RFC; (2) the Commissioner erred as a matter of law by failing to analyze listing 11.02 to his headaches; (3) the Commissioner erred as a matter of law by failing to consider his back problems in his RFC.

## II. STANDARD OF REVIEW

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

The Court "must uphold the Secretary's findings . . . if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [their] conclusion." *Rodriguez v. Sec'y of Health & Hum. Servs.*, 647 F.2d 218, 222-23 (1st Cir. 1981) (citing *Consol. Edison Co.*, 305 U.S. at 229). If substantial evidence supports the Commissioner's decision, the Court should affirm it, "even if the record arguably could justify a different conclusion." *Rodriguez Pagan v. Sec'y of Health & Hum. Servs.*, 819 F.2d 1, 3 (1st Cir. 1987). That said, the ALJ's findings are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999). This Court also keeps in mind throughout its determination that the Social Security Act is a remedial statute meant to be broadly construed and liberally applied and whose purpose is to mitigate the rigors of life for those who are disabled or impoverished. *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981); *Drovak v. Celebrezze*, 345 F.2d 894 (10th Cir. 1965).

## III. ANALYSIS

The three issues that Jonathon raises in this case each relate to the ALJ's RFC finding. To overcome the ALJ's RFC assessment, Jonathon must show evidence of a more limited RFC or that the ALJ erred in his analysis. *Mosconas v. Saul*, No. 19-2049, 2020 WL 6255298, at *1 (1st Cir. Sept. 15, 2020).

### A. Jonathon's ability to complete a workday and workweek

Jonathon argues that had the ALJ considered his inability to complete a workday and/or a workweek, it would have resulted in a more limited RFC that could have precluded him from working. He argues that the ALJ did not note in his RFC his inability to sustain an ordinary routine. He cites his consistent angry mood and altercations with others as contributing to his time off-task that is disruptive in the workplace and affects his daily and weekly routine. He also cites to the record that shows that he regularly missed appointments and group sessions.

The Commissioner cites to the way the regulations define RFC. It "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.'" SSR 96-8p, 1996 WL 374184, at *1. Defined this way, the determination of a claimant's RFC necessarily contemplates an individual's ability to keep an ordinary daily and weekly schedule.

The record supports the ALJ's RFC determination as to Jonathon's severe mental impairment and defeats his argument that the ALJ did not consider his

4

ability to keep an ordinary schedule. The ALJ noted his missed appointments but found no medical evidence in the record to support Jonathon's assertion that would prevent him from keeping employment. The ALJ found state agency psychological consultants Ryan Haggarty, Ph.D. and Michelle Olson, Psy.D. persuasive on this point. They both opined that Jonathon's impairments

> caused only moderate limitations of his ability to carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule and maintain regular attendance and punctuality within customary tolerances, work in coordination with or in proximity to others without being distracted by them, *complete a normal workday and workweek without interruptions from psychologically based symptoms* and perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and respond appropriately to changes in the work setting, further opining that he would work best in environments in which he is not in direct contact with the public with a stable work assignment, but that *he has remained able to carry out simple tasks for two-hour periods over a typical eight-hour workday and forty-hour workday at a non-pressured pace*, work independently in less socially demanding settings, and travel to work and be aware of workplace hazards.

ECF No. 6-20 at 1494-95 (emphasis added).

As far as his interpersonal behaviors and their effect on his ability to sustain a regular schedule of employment, the ALJ relied on treatment providers who found Jonathon to be polite and cooperative, attentive, and engaged, he was able to often socialize with family and friends and has a healthy partner relationship. And while Drs. Haggarty and Olson noted his pattern of recurrent non-compliance with taking his psychotropic medications in recent years, the ALJ noted that the record shows that Jonathon's symptoms have generally responded fairly well to treatment. The

ALJ noted that despite Jonathon's impairments, he continued to engage in activities that require sustained focus, including gardening, working on art and woodworking projects, watching television and movies, and playing video games. The ALJ also recounted Jonathon's testimony about his time working at a grocery store seafood counter where he testified that staff were "thrilled" with his job performance. *Id.* at 1495.

Even where faced with some conflicting evidence of Jonathon's mental health struggles, the ALJ was tasked with weighing the evidence, *Richardson v. Perales*, 402 U.S. 389, 399-400 (1971), and because it finds that his decision conforms with the regulations and substantial evidence supports his decision, the Court declines to reverse or remand it. *Mosconas*, No. 19-2049, 2020 WL 6255298, at *1.

B.  **Consideration of Jonathon's non-severe impairments in his RFC**

Jonathon moves for a reversal or remand based on the way the ALJ handled – or did not handle – his non-severe impairments in consideration of his overall RFC. Even though the ALJ determined that his migraines[1] and back pain were non-severe, in the face of his decision that Jonathon's mental impairments were severe, the ALJ was bound to discuss those non-severe impairments in his RFC analysis. In assessing whether a claimant is disabled, an ALJ must consider "the combined effect of all of a claimant's impairments[,]" regardless of whether those impairments are individually

---

[1] Jonathon argues cursorily that the ALJ did not conduct any analysis at Step 3 of whether his headaches were severe or not severe. ECF No. 8 at 8. That statement is belied by the ALJ discussion in his decision. ECF No. 6-20 at 1485.

6

classified as "severe." *McDonald v. Sec'y Health & Hum. Servs.*, 795 F.2d 1118, 1126 (1st Cir. 1986). Jonathon argues that the ALJ failed in this regard.

### 1. Migraines

Jonathon argues that the ALJ ignored the record evidence of his migraines and, because the ALJ did not consider that evidence, he erroneously concluded that his migraines were not a severe impairment. He also argues that even if the ALJ is correct that his migraines were not severe, the ALJ did not consider his headaches as a non-severe impairment in his RFC determination. The ALJ counters that his decision is replete with references to Jonathon's migraines at steps 2 and 3 and at the RFC stage where he concluded based on substantial evidence that the migraines were non-severe and considered them in deciding his RFC. He also points out that it is Jonathon's burden to prove his own "medically determinable impairment" and he has failed to do so. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).

An impairment is severe if it "significantly limit[s]" a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520 (c). In determining that his migraines were non-severe, the ALJ cited the state agency medical consultants who found that there was no evidence that Jonathon's migraines met that definition. ECF No. 6-20 at 1496. There was evidence that Jonathon did not refill his medication to treat his headaches "in several years because they had not been a significant issue in recent years." *Id.* at 1485. He never sought treatment with a neurologist and never followed up after he was referred to the VA Medical Center's headache unit when he complained of migraines. *Id.*

7

Again, Jonathon has not cited any record evidence in support of his belief that his migraines are a severe impairment rather than non-severe as the ALJ found. He argues, based on his own testimony, that his migraines prevent him from working and he has sought treatment for them. The ALJ did consider Jonathon's testimony but found that it was inconsistent with the record evidence. *Id.* at 1491. And, contrary to Jonathon's contention, the ALJ did consider his testimony about his headaches and other medical records referencing migraines in his RFC assessment. *Id.* at 1490, 1496. He cites other cases where the ALJ did not discuss the claimant's migraines as a non-severe impairment along with severe impairments; the Court has found that that is not the case here.

2.  **Back Pain**

Jonathon argues that the ALJ did not consider his back pain in the RFC analysis even as a non-severe impairment.[2] The Commissioner argues for affirmance because the ALJ followed the regulations in considering the medical evidence of Jonathon's back pain and the record supports his legal analysis.

Reviewing the most recent denial decision, the Court finds that the ALJ did discuss Jonathon's back issues in his RFC assessment. Specifically, he noted that, despite Jonathon's statement that his ability to work is limited in part by his back impairment, he never sought treatment with an orthopedic specialist, and images of

---

[2] In making this argument, Jonathon cites the 2021 ALJ decision that was remanded for reconsideration by agreement of the parties. ECF No. 6-2 at 15-25. This decision does not control here.

his thoracic spine have been unremarkable, while images of his lumbar spine have revealed only minimal/mild degenerative changes. ECF No. 6-20 at 1496. Jonathon alleges that he sometimes uses a cane but there was no reference to that in his records and the record shows that he has repeatedly been observed to have a steady gait. *Id.* The ALJ reported a note from one of Jonathon's mental health treatment providers who took a walk with him during the relevant period and noted that while he reported having difficulty moving more than fifty feet, he was able to tolerate their walk without any apparent pain. *Id.* at 1486. The ALJ weighed this evidence and considered Jonathon's testimony in the face of his severe mental impairment and determined his RFC.

The ALJ considered Jonathon's testimony about his headaches and back pain (*id.* at 1490, 1496), along with his medical records and medical evaluations of his severe mental impairments (*id.* at 1491-1495), and his father's Third Party Function Report (*id.* at 1498)[3] and concluded that Jonathon has certain mental work restrictions, but despite his impairments, he has remained able to perform a range of work at all exertional levels, with the enumerated restrictions. *Id.* at 1498. As long as the ALJ makes his decision on substantial evidence in the record, the Court will not overrule his determinations. Because that is the case here, the Court will not disturb the ALJ's decision.

---

[3] The ALJ noted that while Jonathon's father echoed his son's self-reported limitations, he conceded that he had spent very little time with his son at the time he wrote this report and acknowledged that he did not have enough information to answer many questions about his son's condition. *Id.* at 1489.

9

## IV. CONCLUSION

Because the Court finds that substantial evidence supported the ALJ's decision to deny Jonathon benefits, the Commissioner's disability decision is AFFIRMED. The Court DENIES Jonathon's Motion to Reverse or Remand (ECF No. 8) and GRANTS the Commissioner's Motion to Affirm. ECF No. 9.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
Chief United States District Judge

December 3, 2024